FILED
CLERK, U.S. DISTRICT COURT
MAR 20 2000
CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

DATED: MAR 21 2000
DEPUTY CLERK

THIS CONSTITUTES NOTICE OF ...
AS REQUIRED BY FRCP ...

ENTERED
CLERK, U.S. DISTRICT COURT
MAR 21 2000
CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

✓ Docketed
✓ Copies / NTC Sent
△ JS-5 / JS-6
__ JS-2 / JS-3
__ CLSD

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA SCOTT, as Guardian Ad Litem for minors Detrick Standmore, Kayla Hunter, Michaela Reyes and Ronald Rucker; RENÉ AMY, as Guardian ad Litem for minors, Camden René Amy and Marissa Laraine Amy; GEORGE FRANCIS and SILVIA JIMENEZ MacPHERSON, as Guardian ad Litem for minor, George Gordon MacPherson; ROMEO ALVA, as Guardian ad Litem for minor, Jocelyne Alva,<br><br>Plaintiffs,<br><br>vs.<br><br>PASADENA UNIFIED SCHOOL DISTRICT; GEORGE VAN ALSTINE; GEORGE PADILLA; JACQUELINE JACOBS; BONNIE ARMSTRONG; LISA FOWLER; VERA VIGNES; in their individual and official capacities, and JOSEPH WHITE ASSOCIATES,<br><br>Defendants. | CASE NO. CV 99-1328 DT (MANx)<br><br>**SUA SPONTE ORDER,** PURSUANT TO FED. R. CIV. P. 60(a) and 12(b)(6), **DISMISSING WITH PREJUDICE** PLAINTIFFS' CLAIM BASED ON CAL. CIVIL CODE § 51 FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED<br><br>ORDER **DENYING** PLAINTIFFS' MOTION FOR DAMAGES ARISING OUT OF THEIR CAL. CIVIL CODE § 51 CLAIM<br><br>ORDER **GRANTING** PLAINTIFFS' MOTION FOR ATTORNEY'S FEES<br><br>ORDER **DENYING AS MOOT** PLAINTIFFS' MOTION FOR COSTS |

## I. BACKGROUND

### A. Factual Summary

This action arose out of a policy enacted by the Pasadena Unified School District which established procedures for determining which children may attend certain schools within the school district on the basis of the children's race, color, national origin, ethnicity or gender.

The case has been brought by Plaintiff, Sylvia Scott, as guardian ad litem for minors, Detrick Standmore, Kayla Hunter, Michaela Reyes, and Ronald Rucker; Plaintiff, René Amy, as guardian ad litem for minors, Camden René Amy and Marissa Laraine Amy; Plaintiffs George Francis MacPherson and Silvia Jimenez MacPherson, as guardians ad litem for minor, George Gordon MacPherson; Plaintiff Romeo Alva, as guardian ad litem for minor, Jocelyne Alva (collectively, "Plaintiffs") against Defendants Pasadena Unified School District ("PUSD"), George Van Alstine, George Padilla, Jacqueline Jacobs, Bonnie Armstrong, Lisa Fowler, and Vera Vignes (collectively, the "Individual Defendants"), and Joseph White Associates ("White") (PUSD and the Individual Defendants, collectively, "Defendants"). Plaintiffs' minors are students who attend schools within PUSD.

Previously, this Court granted summary judgment in favor of Plaintiffs, finding that PUSD Board Policy 0460 ("BP 0460") violated the Plaintiffs' civil rights as provided by the United States and State of California Constitutions.

In order to make BP 0460 constitutional, this Court issued a permanent injunction ordering Defendants to cease giving any "consideration" to the race, ethnicity or gender of applicants to the lottery for the voluntary schools under any circumstances. Accordingly, this Court ordered any references to race, ethnicity or gender in BP 0460(d), ¶ 8, null and void and deleted.

Plaintiffs now move for attorney's fees, damages and costs associated with their successful challenge to BP 0460.

## II. Procedural Summary

On February 4, 1999, Plaintiffs filed a Complaint in this Court for Declaratory Relief and Injunctive Relief From Policies and Practices of Defendants.

On February 4, 1999, George Francis MacPherson and Silvia Jimenez MacPherson filed a petition and order for Appointment of Guardian ad Litem as the parents of George Gordon MacPherson, minor. On February 4, 1999, René Amy filed a petition and order for Appointment of Guardian ad Litem as the parent of Camden René Amy and Marissa Laraine Amy, minors. On February 4, 1999, Romeo Alva filed a petition and order for Appointment of Guardian ad Litem as the parents of Jocelyne Alva, minor. On February 4, 1999, Sylvia Scott filed a petition and order for Appointment of Guardian ad Litem as the foster parent of Detrick Standmore, Kayla Hunter, Michaela Reyes, and Ronald Rucker, minors.

On March 29, 1999, Plaintiffs filed a First Amended Complaint alleging the following counts[1]:

 (1) Count 1 (as to all Defendants — general allegations of conduct).

 (2) Count 2 (as to all Defendants — violation of 42 U.S.C. § 1985).

 (3) Count 3 (as to Individual Defendants — deprivation of the privileges to a public education secured by the U.S. and California Constitutions).

 (4) Count 4 (as to Individual Defendants — deprivation of the equal protection of the laws pursuant to the 14th Amendment of the U.S. Constitution and Article I, § 7, of the California Constitution).

 (5) Count 5 (as to Individual Defendants — violation of Article I, § 31 of the California Constitution).

 (6) Count 6 (as to Individual Defendants — violation of the equal protection provisions of the 5th and 14th Amendments to the United States Constitution, and Article I, §7, of the California Constitution).

 (7) Count 7 (as to Individual Defendants — violation of the privileges and immunities clauses of the 14th Amendment to the United States Constitution,

---

[1] The face of the First Amended Complaint fails to specifically label the claim asserted in each "count."

    and Article I, § 7 of the California Constitution).

  (8) Count 8 (as to Individual Defendants — violation of the California Code of Civil Procedure §526a).

  (9) Count 9 (as to Individual Defendants — violation of Article I, § 8 of the California Constitution).

  (10) Count 10 (as to Individual Defendants — violation of 42 U.S.C. § 1983).

  (11) Count 11 (as to Individual Defendants and White — violation of California Civil Code § 51).

  (12) Count 12 (as to PUSD and Individual Defendants — violation of 42 U.S.C. § 2000d).

  On April 19, 1999, Defendants filed a Motion to Dismiss Complaint. On April 23, 1999, Defendants filed a Corrected Motion to Dismiss Complaint.

  On June 17, 1999, Plaintiffs filed a Notice of Voluntary Dismissal of Defendant White, without prejudice.

  On June 28, 1999, this Court filed an Order Denying Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint.

  On July 8, 1999, Defendants filed an Answer to Plaintiff's First Amended Complaint.

  On September 7, 1999, this Court held a Mandatory Status Conference, where it set the Discovery Cut-Off date of February 18, 2000, and the Pre-Trial Conference for April 17, 2000.

On February 7, 2000, this Court issued an Order Denying Defendants' Motion for Summary Judgment and Granting Plaintiffs' Motion for Summary Judgment. This Order was entered on February 8, 2000.

On February 18, 2000, Plaintiffs filed the Motion for Attorney's Fees, Damages and Costs presently before this Court.

On February 22, 2000, this Court issued a Judgment, Findings of Fact and Conclusions of Law. The Judgment, Findings of Fact and Conclusions of Law were entered on February 23, 2000.

I. DISCUSSION

   A. Standard

      1. Federal Rule of Civil Procedure 60(a)

Rule 60(a) of the Federal Rules of Civil Procedure permits a court to correct "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission . . . at any time of its own initiative. . . ."

      2. Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defendant may seek to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Pursuant to Rule 12(b)(6), the court may only dismiss a plaintiff's complaint if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson,

355 U.S. 41, 45-46 (1957); Russell v. Landrieu, 621 F.2d 1037, 1039 (9th Cir. 1980). The question presented by a motion to dismiss is not whether a plaintiff will prevail in the action, but whether a plaintiff is entitled to offer evidence in support of his claim. Cabo Distributing Co., Inc. v. Brady, 821 F.Supp. 601 (N.D. Cal. 1992). Dismissal is proper under Rule 12(b)(6) only where there is a lack of a cognizable legal theory, or an absence of sufficient facts alleged under a cognizable legal theory. Balisteri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). In testing the sufficiency of a complaint, the court must assume that all of the plaintiff's allegations are true, and must construe the complaint in a light most favorable to the plaintiff. United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981) (citing California Dump Truck Owners Assn. v. Associated General Contractors of America, 562 F.2d 607, 614 (9th Cir. 1977); McKinney v. DeBord, 507 F.2d 501, 503 (9th Cir. 1974)). Therefore, it is only the extraordinary case in which dismissal is proper. Corsican Productions v. Pitchess, 338 F.2d 441, 442 (9th Cir. 1964).

Generally, orders granting motions to dismiss are without prejudice unless "allegations of other facts consistent with the challenged pleading could not possibly cure the defect." Schreiber Dist. v. Serv-Well Furniture, 806 F.2d 1393, 1401 (9th Cir. 1986).

7

### 3. Attorneys' Fees

When it sets a fee, the district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate. Intel Corp. v. Terabyte Intern., Inc., 6 F.3d 614, 622 (9th Cir. 1993)(citing Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983)). "If the applicant satisfies its burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee . . . ." Jordan v. Multonomah County, 815 F.2d 1258, 1263 (9th Cir. 1987)(footnote and citation omitted). Next, in appropriate cases, the district court may adjust the "presumptively reasonable" lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation. Id. The Kerr factors are:

1. The time and labor required;
2. The novelty and difficulty of the questions;
3. The skill requisite to perform the legal services properly;
4. The preclusion of other employment due to acceptance of the case;
5. The customary fee;
6. The contingent or fixed nature of the fee;
7. The limitations imposed by the client or the case;
8. The amount involved and the results obtained;

9. The experience, reputation, and ability of the attorneys;
10. The undesirability of the case;
11. The nature of the professional relationship with the client;
12. Awards in similar cases.

Kerr, 526 F.2d at 70. The lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation. Blum v. Stenson, 465 U.S. 886, 898-900, 104 S. Ct. 1541, 1548-49, 79 L. Ed. 2d 891 (1984).

California courts utilize a similar analysis. In determining the reasonableness of the request for attorneys' fees, the court should consider:

> the nature of the litigation, the difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorneys' efforts, his learning, his age, and his experience in the particular type of work demanded, the intricacies and importance of the litigation, the labor and necessity for skilled legal training and ability in trying the cause and the time consumed.

Clayton Development Company v. Falvey (1988) 206 Cal. App. 3d 438, 447 (internal quotations and citations omitted).

9

B. Analysis

   1. **Damages Pursuant To California Civil Code § 51 Are Inappropriate**

Plaintiffs' motion before this Court asks for damages "as to the Individual Defendants and Defendant White [for] violation of CAL. CIVIL CODE § 51," the Unruh Civil Rights Act, as provided by CAL. CIVIL CODE § 52(a). CAL. CIVIL CODE § 51 provides that everyone in the State of California is "free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

While PUSD and the Individual Defendants filed objections to Plaintiffs' Proposed Findings of Fact and Conclusion of Law, they did not object to the inclusion of references to CAL. CIVIL CODE § 51 in them. Now, Defendants contend that summary judgment as to Plaintiffs' cause of action based on this statute was inappropriate since Plaintiffs' motion for summary judgment did not address this claim.

Upon closer inspection, it is clear that Plaintiffs misconstrued this Court's Summary Judgment Order of February 8, 2000. This Court did not address Plaintiffs' Unruh Act claims in its Summary Judgment Order because it believed that this claim was disposed of once Plaintiffs dismissed Defendant White from the action without prejudice on June 17, 1999. This belief was supported by the fact that neither party made any mention

10

whatsoever of CAL. CIVIL CODE § 51 or Plaintiffs' Unruh Act claim in their summary judgment papers.

As the quoted portion of CAL. CIVIL CODE § 51 indicates, it is only applicable to "all **business** establishments of any kind whatsoever." CAL. CIVIL CODE § 51 (emphasis added). Originally, Plaintiffs directed its cause of action under this statute, their eleventh cause of action, against the Individual Defendants and Defendant White. See First Amended Complaint, ¶¶ 61-64. Given that the statute only applies to businesses, Plaintiffs could only conceivably pursue this cause of action, if at all, against Defendant White, not the Individual Defendants. Clearly, one of two things should have taken place in order to eliminate the confusion with which this Court is now faced. Either Plaintiffs should have formally dismissed their Unruh Act claim concurrently with their dismissal of Defendant White or the Individual Defendants should have moved for dismissal with prejudice of the Unruh Act claim as pertaining to them.

In addition, Plaintiffs mistakenly included references to Defendant White throughout the Findings of Fact and Conclusions of Law filed with this Court. Defendants did not bring this mistake to the Court's attention. It was only upon closer inspection of the Findings of Fact and Conclusions of Law in addressing Plaintiffs request for damages pursuant to its Unruh Act claims that the Court noticed this mistake.

Based on the foregoing, pursuant to FED. R. CIV. P. 60(a) and 12(b)(6), this Court hereby **DISMISSES WITH PREJUDICE**,

11

sua sponte, Plaintiffs' eleventh cause of action, which is based on CAL. CIVIL CODE § 51, for failure to state a claim upon which relief may be granted because Plaintiffs cannot maintain that cause of action against the Individual Defendants under any circumstances given that CAL. CIVIL CODE § 51 only applies to "business establishments."

Since Plaintiffs cannot maintain their Unruh Act claim against the Individual Defendants, it follows that they are not entitled to damages pursuant to that claim. Accordingly, this Court hereby **DENIES** Plaintiffs' Motion for Damages and Attorney's Fees arising out of its Unruh Act claim.

Finally, Plaintiffs are hereby ordered to submit amended Findings of Fact, Conclusions of Law and Judgment which make no reference to either CAL. CIVIL CODE § 51 or Defendant White. To the extent this Court's Judgment entered on February 23, 2000 awarded Plaintiffs "damages per CAL. CIVIL CODE § 52(a) in the amount of $1,000.00 per minor Plaintiff," such award is hereby vacated. Nothing in this order shall be construed to disturb, modify or otherwise alter this Court's previous findings with respect to the constitutionality of BP 0460.

**2. Plaintiffs are entitled to reasonable attorneys' fees**

42 U.S.C. § 1988(b) permits a "court, in its discretion, [to] allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Such attorney's fees are available to prevailing parties in

actions based on Sections 1981, 1981(a), 1982, 1983, 1985, 1986 and 2000d of Title 42 of the United States Code. See 42 U.S.C. § 1988(b).

Here, Plaintiffs have prevailed on causes of action based on 42 U.S.C. §§ 1983, 1985 and 2000d, among others. Therefore, they are eligible for attorneys' fees as provided by 42 U.S.C. § 1988(b). Plaintiffs have requested attorneys' fees totaling $99,332.50 for work performed by William G. Gillespie, Kevin T. Snider and Gary G. Kreep. Specifically, Plaintiffs state that Mr. Gillespie worked for 187.3 hours on the case at an hourly rate of two hundred dollars ($200.00), Mr. Snider worked for 285.4 hours on the case at an hourly rate of two hundred dollars ($200.00) and Mr. Kreep worked for 21.3 hours on the case at an hourly rate of two-hundred twenty-five dollars ($225.00).

After examining the billing records submitted by Plaintiffs' counsel as well as the issues raised by the facts of the instant action, this Court finds it appropriate to modify the number of billable hours and hourly rate submitted by Plaintiffs' counsel in support of their Motion for Attorneys' Fees. First of all, this Court finds that given their experience in this area of the law[2], a reasonable hourly rate for the services of Mr. Gillespie and Mr. Snider is one hundred seventy-five dollars ($175.00), not two hundred dollars ($200.00) as Plaintiffs

---

[2] Mr. Gillespie does not indicate how much experience he has in this practice area. Mr. Snider indicates that he has worked for approximately 5-6 years in this practice area. See Snider Decl., ¶ 17.

13

1  request. Given his more than 20 years of experience in the field
2  of education law, see Kreeps Decl., ¶ 7, this Court finds that
3  Mr. Kreep's hourly rate of two hundred twenty-five dollars
4  ($225.00) is reasonable.

5  Secondly, this Court finds that the number of hours for
6  which Plaintiffs have requested attorneys' fees should be altered
7  as well. This Court agrees with the PUSD and Individual
8  Defendants that they should not be held liable for those
9  attorneys' fees incurred for activities relating to Defendant
10 White because Plaintiffs voluntarily dismissed that defendant
11 from the action. Therefore, this Court hereby strikes all time
12 spent on phone conferences with counsel for Defendant White.
13 After reviewing the Itemized Bill submitted by Plaintiffs'
14 counsel in support of the instant Motion, the Court finds that
15 Mr. Snider spent 1.6 hours working on the case with respect to
16 Defendant White and Mr. Kreeps spent a total of 0.3 hours on such
17 work. This time shall be excluded from the both attorneys'
18 lodestar figure.

19 Similarly, time spent by the Plaintiffs' attorneys on
20 discussions with the American Civil Liberties Union ("ACLU"),
21 journalists, local attorneys regarding this Court, and the
22 Pacific Legal Foundation cannot fairly be charged to PUSD and the
23 Individual Defendants because they do not directly relate to
24 Plaintiffs ultimately prevailing against PUSD. Mr. Gillespie
25 spent 2.2 hours in discussions with the ACLU while Mr. Snider
26 spent 0.4 hours. Mr. Gillespie spent 0.5 hours discussing the
27
28

case with the press, 0.2 hours discussing this Court with a local attorney and 0.5 hours discussing the result of the case with the Pacific Legal Foundation. All of this time, which amounts to a total of 3.4 hours of Mr. Gillespie's time and 0.4 hours of Mr. Snider's time, shall be excluded from the lodestar calculation.

Plaintiffs also request attorneys' fees for certain travel time to and from Los Angeles, not all of which shall be included in the lodestar calculation. Specifically, the 8.2 hours Mr. Gillespie spent traveling to and from Los Angeles on January 18, 2000, under the mistaken impression that a hearing would occur shall be excluded from the lodestar calculation because service of Defendants' Ex Parte Application to continue the hearing scheduled for that day was proper. Therefore, Plaintiffs were on notice that the hearing may be rescheduled and it is reasonable to expect Plaintiffs' counsel to take the initiative to check with the Court to see whether or not Defendants' Ex Parte Application was granted.

In addition, there are entries for which Plaintiffs have failed to sufficiently describe so as to support a conclusion that the time spent is related to Plaintiffs' successful prosecution of their claims against the remaining defendants. Furthermore, some of these entries appear duplicative. These include entries such as "E-mail to . . . ," "Review e-mail from . . . ," "T/C . . . ," "Read e-mail," "Sent e-mail," "Read letter," or "Drafted Letter." While the Court recognizes that the work product and attorney-client privileges

15

do not permit complete disclosure of every detail of communication between a client's attorneys or an attorney and his client, Plaintiffs' counsel could have provided more detailed descriptions of these communications.

In all, Mr. Gillespie's billing records refer to 12.5 hours of time which cannot be conclusively attributed to work in connection with Plaintiffs' successful efforts before this Court. Mr. Snider's billing records contain references to a total of 13.3 hours of such time. And, Mr. Kreeps' billing statement contains 3.2 hours of time that is either duplicative of Mr. Snider's work or Mr. Gillespie or which cannot be conclusively attributable to work in connection with Plaintiffs' successful efforts. To equitably resolve the concerns this Court has with these hours, this Court hereby reduces such hours by thirty-three percent (33%). Accordingly, 4.1 hours shall be deducted from Mr. Gillespie's time, 4.4 hours shall be deducted from Mr. Snider's time and 1.1 hours shall be deducted from Mr. Kreeps' time.

Additionally, based on this Court's familiarity with the documents submitted to it, the complexity of the issues in this case and the attorneys' level of expertise in this practice area, some of the hours for which Plaintiffs' counsel have billed are excessive. For example, Mr. Snider has included in his billing record 1.6 hours for drafting the Petition and Order for Appointment of Guardian Ad Litem, a document which barely consists of 3/4 of a page of text. Altogether, this Court has found that 4 hours of Mr. Gillespie's work and 12.9 hours of Mr.

Snider's work on documents submitted to the Court are excessive and shall be excluded from the lodestar calculation.

Finally, Mr. Snider has stated that a total of 0.6 hours was improperly included in his billing summation. See Snider Decl., ¶¶ 12-13. This amount shall also be deducted from the total number of hours used to calculate the lodestar amount.

In summary, 19.7 hours shall be deducted from the 187.3 hours Mr. Gillespie submitted, 19.9 hours shall be deducted from the 285.4 hours Mr. Snider submitted and 1.4 hours shall be deducted from the 21.3 hours Mr. Kreeps submitted.

Based on the foregoing, Mr. Gillespie's lodestar figure is the result of 167.6 hours at $175 per hour, which amounts to $29,330. Mr. Snider's lodestar figure is the result of 265.5 hours at $175 per hour, which amounts to $46,462.50. Mr. Kreeps' lodestar figure is the result of 19.9 hours at $225 per hour, which amounts to $4,477.50.

Given the circumstances and complexity of the issues of the case at bar, it is unnecessary for this Court to apply the Kerr factors to adjust Plaintiffs' attorneys' fees further. Based on the foregoing, this Court hereby **GRANTS** Plaintiffs' Motion for Attorneys' Fees. PUSD and the Individual Defendants are hereby ordered to pay Plaintiffs' attorneys' fees totaling $80,270.00.

3. **Plaintiffs' Motion for Costs Is Moot**

In the Judgment entered on February 23, 2000, this Court awarded costs to Plaintiffs. Pursuant to Local Rule 16 of

17

the Local Rules of Civil Procedure, Plaintiffs, as the prevailing party, must file and serve their Bill of Costs with the Clerk of the Central District of California, not this Court, within 15 days after the entry of judgment. Such Bill of Costs must be attached to a Notice of Application to the Clerk to Tax Costs. It is for the Clerk of the Central District, not this Court, to evaluate and decide what costs, if any, may be taxed to the PUSD and Individual Defendants. In light of the fact that Plaintiffs' Motion for Attorneys' Fees, Damages and Costs contains no argument whatsoever addressing its Bill of Costs, this Court assumes that Plaintiffs are aware of Local Rule 16.3's requirement.

Based on the foregoing, this Court hereby **DENIES AS MOOT** Plaintiffs' Motion for Costs.

## III. CONCLUSION

Based on the foregoing, pursuant to FED. R. CIV. P. 60(a), this Court hereby orders Plaintiffs, *sua sponte*, to submit amended Findings of Fact, Conclusions of Law and Judgment which make no reference to either CAL. CIV. CODE § 51 or Defendant White.

Accordingly, this Court hereby **DENIES** Plaintiffs' Motion for Damages and Attorney's Fees arising out of its Unruh Act claim. Nothing in this order shall be construed to disturb, modify or otherwise alter this Court's previous findings with respect to the constitutionality of BP 0460.

1         In addition, this Court hereby **GRANTS** Plaintiffs'
2 Motion for Attorneys' Fees in the amount of $80,270.00.
3         Finally, this Court hereby **DISMISSES AS MOOT**
4 Plaintiffs' Motion for Costs.

7         IT IS SO ORDERED.

9 DATED:   MAR 2 0 2000         **DICKRAN TEVRIZIAN**
                                      Dickran Tevrizian, Judge
                                      United States District Court